UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20452-CR-Gayles

UNITED STATES OF AMERICA

vs.

JUDITH DIANNE PARIS-PINDER,

Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and Judith Dianne Paris-Pinder (hereinafter referred to as "Defendant") enter into the following agreement:

1. Defendant agrees to plead guilty to Count 1 of the Information, which count charges Defendant with Wire Fraud, in violation of Title 18, United States Code, Section 1343.

2. Defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). Defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. Defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed and may raise or lower that advisory sentence under the Sentencing Guidelines. Defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not

bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, Defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that Defendant may not withdraw the plea solely as a result of the sentence imposed.

3. Defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to 20 years, followed by a term of supervised release of up to three (3) years. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 or double the gross gain or gross loss, and must order restitution. The Court may also order forfeiture.

4. Defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100 will be imposed on Defendant. Defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If Defendant is financially unable to pay the special assessment, Defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for Defendant's failure to pay.

5. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning Defendant and Defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to Defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon Defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing Defendant's offense level is determined to be 16 or greater, this Office will make a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that Defendant has assisted authorities in the investigation or prosecution of Defendant's own misconduct by timely notifying authorities of Defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office further agrees to recommend that Defendant be sentenced at the low end of the guideline range, as that range is determined by the Court. This Office, however, will not be required to make this motion and these recommendations if Defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. Defendant agrees to plead guilty to Count 1 of the Information, which count charges Defendant with Wire Fraud, in violation of Title 18, United States Code, Section 1343. Defendant agrees and understands that this charge involves Defendant's conduct from in or around November 2019 through in or around August 2021, in an investment fraud scheme whereby people were enticed to invest in a business that purportedly used investor funds to pay civil plaintiff clients a

reduced advance on their insurance settlements thereby making a profit once the full settlements were paid, when in truth Defendant used new investor money to pay existing investors, while taking substantial investor proceeds for her own use and enjoyment. The plea entered by Defendant pursuant to this agreement resolves Defendant's federal criminal liability in the Southern District of Florida growing out of Defendant's criminal conduct in the investment fraud scheme described herein as known to the United States Attorney's Office for the Southern District of Florida as of the date of this plea agreement.

8. This Office and Defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

(1). <u>Base Offense Level</u>: That the Base Offense Level under Section 2B1.1(a)(1) of the Sentencing Guidelines is 7.

(2). <u>Loss</u>: That the relevant amount of actual, probable or intended loss under Section 2B1.1(b)(1) of the Sentencing Guidelines resulting from the offense committed in this case is more than $1,500,000 but less than $3,500,000.

(3). That the Offense involved 10 or more victims and resulted in financial hardship to one or more victims. The offense level should increase by two (2) levels pursuant to Sentencing Guidelines Section 2B1.1(b)(2)(A).

(4). <u>Sophisticated Means</u>: The parties do <u>not</u> have an agreement as to the applicability of an adjustment for sophisticated means, pursuant to Section 2B1.1(b)(10)(C) of the Sentencing Guidelines.

(5). <u>Role</u>: That Defendant should <u>not</u> receive an adjustment for role in the offense pursuant to Sections 3B1.1 or 3B1.2 of the Sentencing Guidelines.

(6).     <u>Abuse of Trust and Use of Special Skill</u>:  That Defendant should not receive a two-level increase pursuant to Section 3B1.3 of the Sentencing Guidelines.

9. This Office and Defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court impose a sentence within the advisory sentencing guideline range produced by application of the Sentencing Guidelines.  Although not binding on the probation office or the Court, this Office and Defendant further agree that, except as otherwise expressly contemplated in this Plea Agreement, they will jointly recommend that the Court neither depart upward nor depart downward under the Sentencing Guidelines when determining the advisory sentencing guideline range in this case.

10. This Office and Defendant stipulate to, and agree not to contest, the facts in the following Factual Proffer, and stipulate that such facts, in accordance with Rule 11(b)(3) of the Federal Rules of Criminal Procedure, provide sufficient factual basis for the plea of guilty in this matter.  Because the factual basis set forth in the Factual Proffer has the limited purpose of supporting Defendant's guilty plea to the charge cited in paragraph 1, the Factual Proffer does not purport to represent all facts and circumstances relating to Defendant's participation.  The Factual Proffer is as follows:

> If this case had proceeded to trial, the United States would prove beyond a reasonable doubt that since at least in or around November 2019 through in or around August 2021, Defendant executed an investment fraud scheme, which scheme utilized interstate wire communications, including electronic bank transfers and telephone communications.
>
> In this fraud scheme, Defendant represented to investors that she worked for (or with) an accident attorney who had clients with pending lawsuit insurance settlements coming.  The purported clients were willing to take a smaller payment immediately in return for later providing the larger insurance settlement payment to the investor.  Defendant told investors she was looking for "hard money lenders" to finance the payments to the attorney's clients.  Defendant explained the investor would receive their investment plus interest when the insurance company paid in full.

Defendant documented the investments via contracts called "Business Loan Agreements." The contracts stated the investor was "investing" in a business deal with Defendant. Defendant signed the contracts as the "Borrower" and the investor signed as the "Lender." The contract stipulated that Defendant would repay the investor in full plus the stated interest on a date stated in the contract.

Defendant used bank accounts in the name of the Pinder Associates LLC and Pinder Multi Services & Marketing Group LLC, companies Defendant controlled, to accept and handle investor funds. Defendant preferred to receive the funds from investors in cash, but also accepted funds via wire transfers.

Defendant solicited investors personally and also offered commissions to existing investors to bring her new investors. Whatever the form of the solicitation, Defendant's representations were the same: (1) the investor's money would be used to make partial advances on outstanding payments from insurance companies; (2) the investment would realize a profit when the full insurance settlement was paid at a later date; and (3) the investor would be paid back the full investment principal plus an agreed upon interest (typically 50%) at the end of the investment term (typically six weeks).

Defendant's representations to investors that investor money would be used to make partial advances on outstanding payments from insurance companies and that the investment would realize a profit when the full insurance settlement was paid were lies. In truth, Defendant did not use investor funds to make advance partial payments on insurance settlements. Therefore, Defendant's ability to repay investors their money plus the promised returns depended on her ability to continue to raise new investor money, use the new funds raised to pay existing investment contracts, and convince existing investors to roll over their investments into a new investment contract, thus deferring her obligation to pay investors.

Investor "JEM" was first solicited by "Investor 1," an earlier investor who was raising funds for Defendant in exchange for the promised payment of commissions. In 2021, Investor 1 told JEM that Defendant worked for an attorney and was looking for investors to fund advance payments to legal clients who were pending a lawsuit settlement payment from accidents but wanted money now. Defendant would use the investor's money to advance a reduced amount to the legal client, and the investor would realize a profit when the full insurance settlement was paid. JEM was promised 50% return on investment in six weeks. Thereafter, JEM spoke to Defendant on the telephone. Defendant verified what JEM had been told about the investment opportunity she offered. JEM agreed to invest $10,000. Defendant told JEM that because JEM was in New York and Defendant was in Miami, JEM should wire his investment money to Defendant.

On or about August 2, 2021, JEM wired $10,000 from his USAA Federal Savings Bank account ending in 9348, through servers in Texas and New Jersey, to

Defendant's TD Bank account ending in 1566, in Miami, Florida. In return, JEM was emailed an investment contract signed by Defendant and "effective" August 1, 2021. In this contract, Defendant promised to return to JEM the $10,000 invested plus $5,000 "interest" no later than September 13, 2021. On September 7, 2021, before expiration of this first contract, JEM similarly invested an additional $10,000 with Defendant in another investment contract.

When the payment on the August 1, 2021, investment contract was due, JEM asked Defendant to pay JEM. Defendant did not pay JEM. Instead, Defendant told JEM to "be patient" and made promises to pay on a subsequent day. Thereafter, Defendant gave JEM excuses for nonpayment, including issues with the bank. Later, JEM learned that Defendant had failed to pay other investors, and it became clear to JEM that Defendant would not be paying JEM.

The $20,000 JEM lost to Defendant came from money JEM had saved in the hopes of purchasing a house or to pay for further education. Had JEM known that Defendant was not using the money to pay advances on lawsuit settlements, JEM would not have invested with Defendant.

Through this scheme, Defendant fraudulently obtained, directly and through others, approximately $4,614,000 in proceeds from investors, thereby causing approximately $2,439,000 in losses to investors.

11. In the event that for any reason Defendant withdraws from this agreement prior to or after pleading guilty to the charged identified in paragraph 1 above, or should this Office, in its sole discretion, determine that Defendant failed to fully comply with any of the provisions of this agreement, Defendant agrees and understands that she will forego the benefits and concessions contained in this plea agreement, and waive any protection afforded by Section 1B1.8 of the Sentencing Guidelines, as well as any protection afforded by Federal Rules of Criminal Procedure 11(f) and Federal Rule of Evidence 410. Defendant further understands that in the event that for any reason she does not plead guilty, the Factual Proffer and any other statements made previously by Defendant under this agreement or as part of any plea discussions, will be fully admissible against her in any civil or criminal proceedings, notwithstanding any prior agreement with this Office.

12. Defendant is aware that Title 28, United States Code, Section 1291 and Title 18, United States Code, Section 3742 afford Defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, Defendant hereby waives all rights conferred by Sections 1291 and 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. Defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals Defendant's sentence pursuant to Sections 3742(b) and 1291, Defendant shall be released from the above waiver of his right to appeal his sentence.

13. Defendant further hereby waives all rights conferred by Title 28, United States Code, Section 1291 to assert any claim that (1) the statute(s) to which Defendant is pleading guilty is/are unconstitutional; and/or (2) the admitted conduct does not fall within the scope of the statute(s) of conviction.

14. By signing this agreement, Defendant acknowledges that Defendant has discussed the appeal waiver set forth in this agreement with Defendant's attorney. Defendant further agrees, together with this Office, to request that the Court enter a specific finding that Defendant's waiver of his right to appeal the sentence imposed in this case and his right to appeal his conviction in the manner described above was knowing and voluntary.

15. Defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any property, real or personal,

which constitutes or is derived from proceeds traceable to the commission of the offense in violation of Title 18, United States Code, Section 1343, pursuant to Title 18, United States Code, Section 981(a)(1)(C). In addition, Defendant agrees to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p). The property subject to forfeiture includes, but is not limited to:

    a.     a forfeiture money judgment in the sum of approximately $2,439,000 in United States currency, which sum represents the value of any property that constitutes or is derived from proceeds traceable to Defendant's commission of the offense.

16. Defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. Defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In addition, Defendant agrees to waive: any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. Rs. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

17. Defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which Defendant has or had any direct or indirect financial interest or control, and any assets involved in the offense of conviction. Defendant agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the United States as subject to forfeiture. This includes, but is not limited to, the timely delivery upon request of all necessary and appropriate documentation to deliver good and marketable title, consenting to all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

18. In furtherance of the satisfaction of a forfeiture money judgment entered by the Court in this case, Defendant agrees to the following:

a. submit a financial statement to this Office upon request, within 14 calendar days from the request;

b. maintain any asset valued in excess of $10,000, and not sell, hide, waste, encumber, destroy, or otherwise devalue such asset without prior approval of the United States;

c. provide information about any transfer of an asset valued in excess of $10,000 since the commencement of the offense conduct in this case to date;

d. cooperate fully in the investigation and the identification of assets, including liquidating assets, meeting with representatives of the United States, and providing any documentation requested; and

e. notify, within 30 days, the Clerk of the Court for the Southern District of Florida and this Office of: (i) any change of name, residence, or mailing address, and (ii) any material change in economic circumstances.

Defendant further understands that providing false or incomplete information about assets, concealing assets, making materially false statements or representations, or making or using false writings or documents pertaining to assets, taking any action that would impede the forfeiture of assets, or failing to cooperate fully in the investigation and identification of assets may be used as a basis for: (i) separate prosecution, including, under 18 U.S.C. § 1001; or (ii) recommendation of a denial of a reduction for acceptance of responsibility pursuant to the United States Sentencing Guidelines § 3E1.1.

19. Defendant recognizes that pleading guilty may have consequences with respect to Defendant's immigration status if Defendant is not a natural-born citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which

defendant is pleading guilty. In addition, under certain circumstances, denaturalization may also be a consequence of pleading guilty to a crime. Removal, denaturalization, and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including Defendant's attorney or the Court, can predict to a certainty the effect of Defendant's conviction on Defendant's immigration status. Defendant nevertheless affirms that Defendant wants to plead guilty regardless of any immigration consequences that Defendant's plea may entail, even if the consequence is Defendant's denaturalization and automatic removal from the United States.

20. This is the entire agreement and understanding between this Office and Defendant. There are no other agreements, promises, representations, or understandings.

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

Date: 11/16/2022    By: _____
                         Eric E. Morales
                         Assistant U.S. Attorney

Date: 8/10/22       By: _____
                         SCOTT B. SAUL, ESQ.
                         ATTORNEY FOR DEFENDANT

Date: 8-9-22        By: _____
                         JUDITH DIANNE PARIS-PINDER
                         DEFENDANT